**NOT FOR PUBLICATION**                                    **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
ANTHONY MILANO,                         :
                                        :
              Plaintiff,       :
                                        :  Civil Action No. 10-6740(FSH)
                                        :
            v.                      :  **OPINION & ORDER**
                                        :
COMMISSIONER OF SOCIAL                  :  Dated: November 30, 2011
SECURITY,                               :
                                        :
             Defendant.       :
_____  :

**HOCHBERG, District Judge:**

      This matter comes before the Court upon Plaintiff Anthony Milano's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

### I. BACKGROUND

    **A.    Plaintiff's Medical and Vocational History**

        1.    General Medical and Vocational Background

      On September 27, 2007, Plaintiff filed a claim for a period of disability and disability insurance benefits. Plaintiff claimed the disability began January 2, 2005 and consisted of depression, bipolar disorder, back problems, and arthritis in the neck. (Tr. 127). Plaintiff clarified at his hearing before the ALJ that he would be pursuing his claim for benefits solely as

to his non-exertional impairments. (Tr. 27). In 2009, Plaintiff was incarcerated for six months for working at least part time doing maintenance and plumbing and collecting unemployment at the same time. *Id.* Other than the work leading to his incarceration, Plaintiff has been out of work since the onset of his symptoms on January 2, 2005. (Tr. 16).

Plaintiff is a 55-year-old male with an 8th grade education. (Complaint 1). He was in special education throughout his academic career and he can write a little, but cannot spell. (Tr. 17). He suffers from depression and bipolar disorder. (Tr. 14-15). Plaintiff's previous work experience consisted of doing maintenance and repairs in hotels and office buildings. (Tr. 17). He worked fixing sheetrock, painting, and did general repairs on site. *Id.* Plaintiff could not keep a job for more than one year at a time as he thought others were constantly talking about him and plotting against him. (Tr. 18).

Plaintiff lives in a rooming house with a shared kitchen and bathroom. (Tr. 18). He is able to cook and clean for himself and will take occasional walks through the park. *Id.* He has trouble reading, but can read simple notes or instructions. *Id.* He sleeps a lot and will sometimes cry and stay in bed all day. *Id.* He will watch TV, but has poor concentration and quickly gets bored. *Id.* He went to Trinitas for mental health treatment for six months until his insurance stopped covering the costs. *Id.* He is now using Xanax to cope with his symptoms. *Id.*

2. <u>The Assessments of Plaintiffs Primary Care Physician and Psychiatrist</u>

Dr. Saul Gorman, a psychiatric specialist at Trinitas Hospital, explained in a report dated August 11, 2008 that Plaintiff was receiving ongoing treatment for mild depression and anxiety. *Id.* Plaintiff was first seen at Trinitas in the emergency room on January 22, 2008. *Id.* He further explained that Plaintiff had been previously diagnosed with bipolar disorder. *Id.* According to Dr. Gorman, Plaintiff was taking medication and handling it well. *Id.* Plaintiff was

reported to have a good appetite and was sleeping well. *Id.* Dr. Gorman noted Plaintiff did have anxiety, however his thought process was coherent with intact cognitive capabilities. *Id.* Plaintiff was not noted to be a suicide risk. *Id.* (citing Exhibit F). Dr. Gorman's report further explained that Plaintiff was not on any medication and did not have prior hospitalizations. *Id.* Finally, Dr. Gorman's progress notes regarding Plaintiff explained "there were no significant limitations with regard to working resulting from [Plaintiff's] mental condition." *Id.* (citing Exhibit 10F).

While at Trinitas, Dr. Benjamin Chu, a psychiatric specialist, also treated Plaintiff. *Id.* Dr. Chu transferred Plaintiff to out-patient care and explained that although Plaintiff had been off medication for some time, "it did not affect him much." *Id.*

### 3. The Residual Functioning Capacity Assessment

A Disability Determination Services ("DDS") consultant, Michael Britton, Ed.D., also examined Plaintiff. This consultant found that Plaintiff had a severe impairment, depression, but it did not "prevent him from understanding, remembering and following simple instruction[s]." (Exhibit 9F). The DDS consultant further explained that Plaintiff could acclimate to "supervision and occasional changes in routine." *Id.* Last, the DDS examiner found that Plaintiff could sustain "adequate concentration, persistence and pace for simple, routine work." *Id.*

### 4. Testimonial Evidence

An administrative hearing was held before the Administrative Law Judge ("ALJ") on May 12, 2010. Plaintiff testified that he had been unable to obtain substantial and gainful employment since January 2005. (Brief of Comm'r of Social Security at 7). He did not think he could perform his last job as the skill level required was above his alleged capabilities. (Brief of Plaintiff at 15). Plaintiff argued that he completed skilled repair tasks in varied environments.

*See id.* at 17 (explaining, for example, that Plaintiff was now "only capable of simple routine work and his past relevant work required skilled and semi-skilled tasks, fixing sheet rock, painting and performing all of the aspects of a maintenance worker in commercial buildings and hotels").  Plaintiff did, however, state that most of his jobs were maintenance and minor repairs although he did do a little plumbing and a little lifting.  (Tr. 18).  Plaintiff expressed his desire to work by himself, as having other people around would bother him.  *Id.*

Plaintiff explained that he was currently unable to do many things, including work, as a result of his mental problem.  (Tr. 17).  He further explained that he can get himself in the right mental place for a job, but after some time has elapsed, he feels that people are against him and want to get rid of him.  *Id.*  He said he could not hold a job for more than one year and it is hard for him to understand things.  (Tr. 18).  He has trouble concentrating and stays away from crowds, as he believes others are talking about him.  *Id.*  Plaintiff further described that he gets very sad and will sometimes cry and stay in bed all day.  *Id.*

### B.   The Disability Standard and the ALJ's Decision

#### 1.   The Statutory Standard for a Finding of Disability

A person is technically disabled under the Social Security Act ("SSA") if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2006).

The SSA defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3) (2006).

A person will be considered disabled "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A) (2006).

Finally, the SSA defines work which exists in the national economy as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A) (2006).

In determining disability claims, the Commissioner applies a five-step procedure according to 20 C.F.R. §§ 404.1520, 416.920 and Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999). The steps are explained as follows:

Step One: Substantial Gainful Activity. The Commissioner first looks to a claimant's current employment situation and considers whether such employment constitutes substantial gainful activity. Substantial here means the employment requires "significant physical [or] mental activities." 20 C.F.R. § 416.972 (2010). Further, even part time or inconsistent work can still be considered substantial. *Id.* Gainful work is "work activity that you do for pay or profit." *Id.* If the claimant is currently engaged in substantial gainful activity, he or she will not be found disabled and consideration of any medical condition is unnecessary. 20 C.F.R. § 416.920(b) (2010).

Step Two: Severe Impairment. If the claimant is not engaged in substantial gainful activity, he or she must then demonstrate the existence of a severe impairment. A "severe impairment" is an impairment "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities." 20 C.F.R. § 416.920(c) (2010). If the claimant is

5

unable to present a severe impairment, or combination of impairments considered severe, he or she will not be found disabled.  *Id.*

Step Three: Listed Impairment.  If the claimant is able to demonstrate a severe impairment, the Commissioner next determines if the impairment meets or equals an impairment listed on the Listing of Impairments in 20 C.F.R. § 404, subpt. P, app. 1 (2010).  If the claimant has such an impairment, he is found disabled.  If not, the Commissioner proceeds to the fourth step.  20 C.F.R. § 416.920(d) (2010).

Step Four: Residual Functioning Capacity (RFC).  In the fourth step, the Commissioner decides whether, despite his or her impairment, the claimant still possesses the RFC to perform his past relevant work.  If so, the claimant is found not disabled and the inquiry is at an end.  If not, the Commissioner then proceeds to the fifth step.  20 C.F.R. § 416.920(e)-(f) (2010).

Step Five: Other Work.  If the claimant is unable to perform his past work, the Commissioner considers the individual's RFC, age, education, and past work experience to determine if he is able to make an adjustment to other work.  If he cannot do so, the claimant is found disabled.  20 C.F.R. § 416.920(g) (2010).

This five-step analysis has a shifting burden of proof.  Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  For the first four steps, the claimant bears the burden of persuasion.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the analysis reaches the fifth step, however, the Commissioner then bears the burden of proving that the claimant is unable to perform other work that is available in the national economy.  *Id.*

2. The ALJ's Decision

Applying this five-step analysis, and upon review of the entire record, the ALJ first found that Plaintiff had not engaged in any substantial gainful activity since January 2, 2005.  (Tr. 16).

At step two, the ALJ determined that Plaintiff suffers from depression, a severe impairment. *Id.* At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the listed impairments in 20 C.F.R. § 404, subpt. P, app. 1. (Tr. 17).

At step four, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels. *Id.* The ALJ did find the following non-exertional limitation: claimant is capable of understanding, remembering, and following simple instructions. *Id.* He is further able to adapt to supervision and occasional changes in routine while sustaining adequate concentration, persistence, and pace for routine work. *Id.*

The ALJ determined that despite the presence of a severe impairment, the evidence established that Plaintiff is able to perform many basic activities associated with his previous work experience. (Tr. 19). The ALJ relied on the reports of Plaintiff's physician, Dr. Gorman, which explained that Plaintiff did not have any significant mental limitations with regard to working. *Id.* (citing Exhibit 10F). The ALJ also looked to the examination of Plaintiff by Michael Britton, a DDS consultant. Mr. Britton found that Plaintiff was capable of basic work activity and could maintain concentration, persistence, and pace adequate for routine work. *Id.* (citing Exhibit 9F). On this basis, the ALJ found that Plaintiff is capable of performing his past relevant work as a maintenance worker. *Id.* As Plaintiff was found capable of resuming his past relevant work, Plaintiff was deemed not disabled and the ALJ did not need to proceed to step five. 20 C.F.R. § 416.920(b) (2010).

## II.  DISCUSSION

A.  **Standard of Review**

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record supporting his decision.  42 U.S.C.A. § 405(g); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record.  Simmons v. Hecker, 807 F.2d 54, 58 (3d Cir. 1986).

A.  **Review of the Commissioner's Decision**

Plaintiff contends that the ALJ erred because the ALJ's conclusion is not supported by substantial evidence and the ALJ did not sufficiently articulate his reasoning or give adequate weight to the evidence.  Specifically, Plaintiff argues that (1) the ALJ did not properly consider Plaintiff's subjective evaluations of his ability level and; (2) the ALJ's RFC finding was not supported by substantial evidence.  The Court will address each argument in turn.

1.  The ALJ's Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ did not properly consider Plaintiff's subjective account of his condition.  In evaluating medically determinable impairments and the extent to which they limit one's capacity to work, the Commissioner is required to consider "all reasonable evidence . . . including statements from [the claimant]." 20 C.F.R. §§ 416.927(c), 404.1529(c).  In addition, the Commissioner must consider the claimant's history, laboratory findings, statements from treating and non-treating sources, and treating and non-treating medical opinions.  *Id.*  Subjective

8

complaints of symptoms and disability must be substantiated by medical evidence. 42 U.S.C. § 423(d); Williams v. Sullivan, 380 F. Supp. 2d 496, 508 (D.N.J. 2005).

Here, the record supports the ALJ's conclusion that Plaintiff's conditions were mild or controlled and that Plaintiff could function beyond the limitations he claimed in his testimony. (Tr. 16-18). Additionally, Plaintiff was actually working, after the claimed onset date in January, 2005. (Tr. 115-16). Plaintiff admitted as much in his hearing when he explained that he was employed in 2008 or 2009. (Tr. 39, 112, 115-16). Indeed, Plaintiff was then incarcerated for lying about his employment status while collecting disability. (Tr. 18). Plaintiff's willingness to say he was ready, willing, and able to work, in order to collect unemployment during the period of his alleged disability further discredits his testimony.

The Commissioner is authorized to use discretion when evaluating Plaintiff's credibility while looking at all of the evidence available. Cotter v. Harris, 642 F.2d 700, 705-06 (3d Cir. 1981). In the present case, there is ample evidence to support any reduced weight the ALJ accorded Plaintiff's testimony. See Tr. 16-18 (detailing the medical evidence explaining that Plaintiff is still able to work and Plaintiff's own history of working without special considerations after the alleged onset date).

2. The ALJ's Determination of Plaintiff's RFC

In determining whether a claimant is disabled, the ALJ must determine the Plaintiff's RFC. 20 C.F.R. § 416.920(e) (2010). In making this determination, the ALJ will consider all relevant medical evidence, as well as all impairments. Here the ALJ determined that Plaintiff has the capacity to perform routine maintenance work, plumbing, lifting, and repairs as well as following simple instructions. (Tr. 18-19). The ALJ noted that Plaintiff did suffer some limitation due to his impairment, but he could nonetheless perform at all exertional levels with

9

the caveat that claimant could not comprehend complex instructions or perform more nuanced, non-routine work. *Id.* Further, Plaintiff is able to care for himself and carry out daily activities such as cooking and cleaning. *Id.*

The ALJ also gave deference to the medical opinions offered by the Plaintiff's physician, Dr. Gorman, and the DDS Consultant, Mr. Britton. Both of these individuals offered reports explaining that while Plaintiff was suffering from depression and could be somewhat limited as a result, it was not such a hindrance so as to prevent him from working altogether. (Tr. 19). The ALJ therefore found that Plaintiff is still capable of performing his past relevant work as a maintenance worker. *Id.*

Plaintiff argues that his own testimony, as well as the reconsideration letter from Social Security dated February 11, 2009, should be enough to show that he can no longer perform his past work. Plaintiff further argues that his past work was non-routine and therefore he is unable to resume this work, as he should now be limited to routine work.

However, Plaintiff offers little objective evidence to counter the ALJ's opinion that Plaintiff is able to perform his past relevant work. Plaintiff did meet with Dr. Gorman at Trinitas for six months until his insurance stopped paying and has been off and on certain medications, including Xanax. (Tr. 18). Dr. Gorman noted that Plaintiff was being seen for mild depression and anxiety and had previously been diagnosed with bipolar disorder. (Exhibit 7F). Dr. Gorman then reported that Plaintiff was on medication and handling it well. *Id.* Dr. Gorman did find Plaintiff to have some anxiety, however his thought process was coherent with intact cognitive capabilities. *Id.* Finally, Dr. Gorman explained "there were no significant limitations with regard to working resulting from [Plaintiff's] mental condition." *Id.* This finding was reinforced by Dr. Chu's notes upon Plaintiff's transition to an outpatient program. There, Dr. Chu

explained that Plaintiff seemed to have consistent behavior whether he was using medication or not. *Id.*

These medical findings, relied on by the ALJ, are further confirmed by the DDS Consultant, Mr. Britton. Mr. Britton found that Plaintiff did suffer from depression, but it did not "prevent him from understanding, remembering and following simple instruction[s]." *Id.* Mr. Britton also found that Plaintiff could acclimate to supervision and some changes in routine while also sustaining "adequate concentration, persistence and pace for simple, routine work." *Id.* (citing Exhibit 9F). Mr. Britton found there were only moderate limitations on Plaintiff's daily life activities and ability to function in social functioning. (Tr. 210). Mr. Britton's notes described Plaintiff's marked settings in understanding, remembering, and carrying out detailed instructions. (Tr. 214). These limitations were directly followed by the ALJ. (Tr. 17-18).

Plaintiff relies on the <u>Dictionary of Occupational Titles</u> as a source explaining that Plaintiff has a specific vocational preparation of seven. (Brief of Plaintiff at 24). This would mean that Plaintiff's work as a maintenance worker would require two to four years of training to learn. However, Plaintiff has already been trained in maintenance work and has performed it for years, including when he was collecting unemployment in 2009 after the onset of his disability in 2005. As the ALJ found, relying on medical and DDS consultant testimony, that Plaintiff could resume his past work, Plaintiff's argument that he is unable to receive proper vocational training is irrelevant. This argument would be proper in step five, but the ALJ had sufficient evidence, namely the reports of Dr. Gorman and Mr. Britton, to find that Plaintiff was capable of performing his past relevant work despite his non-exertional limitations.

The limited medical evidence proffered by Plaintiff's physician and the DDS Consultant show that Plaintiff did well on and off his medication and only had mild impairments. There is

11

minimal objective evidence describing abnormal cognitive functioning or severe adverse effects due to Plaintiff's disability.  Plaintiff must bring forth more substantial evidence than self-provided statements of his symptoms.  20 C.F.R. §§ 404.1508, 416.908.  Plaintiff must also provide medical evidence demonstrating any impairments and their respective severities during the alleged period of disability.  20 C.F.R. §§ 404.1512, 416.912.  Plaintiff must be able to demonstrate, looking at the totality of evidence, that he or she is disabled.  This should be done using medical findings which attest to the existence of a severe condition that produced the alleged limitations.  20 C.F.R. §§ 404.1529(b), 416.929(b);  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

The Plaintiff's lack of medical evidence in conjunction with medical evidence showing that Plaintiff's disability was not a large restriction on his occupation is substantial evidence that supports the ALJ's opinion.  The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence-particularly certain types of evidence (e.g. that offered by treating physicians)-or if it really constitutes not evidence but mere conclusion."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir.1983).  Therefore, the relevant determination for the Court is not to make a *de novo* review of the circumstances, but instead to see if the ALJ's conclusions are reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.1988).  Even should the reviewing Court think a case could be decided differently, it nonetheless must defer to the ALJ and affirm the decision where it is supported by substantial evidence.  See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986).  In a similar case, the Third Circuit found that without medical evidence on behalf of a Plaintiff describing his or her "work-related functional limitations . . . [Plaintiff]

cannot establish disability under the Social Security Act." Lane v. Comm'r of Social Security, 100 Fed App'x 90, 95-96 (3d Cir. 2004) (citing Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990) ("A claimant must show not just diagnosis, but functional limitations preventing performance of substantial gainful activity.")). The ALJ considered the opinions of Dr. Gorman and Dr. Chu, along with Mr. Britton's evaluation of Plaintiff's disability. The ALJ found, based in large part on these opinions, that Plaintiff was able to resume his past relevant work. (Tr. 18-19). Therefore, the Court finds that there is substantial evidence in the record to indicate that the ALJ's inquiry was at an end and there was no need to proceed to step five.

### III.     CONCLUSION & ORDER

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff is not disabled is based on substantial evidence in the record. Accordingly, this Court **AFFIRMS** the Commissioner's decision to deny Plaintiff Social Security Benefits.

Therefore, **IT IS** on this 30th day of November, 2011, hereby

**ORDERED** that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

s/ Faith S. Hochberg<br>
Hon. Faith S. Hochberg, U.S.D.J.